UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) M.J. No. 21-6484-MPK |
| | ) |
| BORIS PEGUERO-ARRENDELL, | ) |
| | ) |
| Defendant | ) |

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Special Agent Brady O'Donnell, being duly sworn, depose and state that:

1. I have been employed by the Drug Enforcement Administration ("DEA") since August of 2020. I am currently assigned to the New England Field Division, Task Force 5 as a Special Agent, where I am tasked to investigate Drug Trafficking Organizations and their ties to violent crime. I graduated from the DEA Basic Agent Training Academy in Quantico, Virginia in December of 2020, where I received specialized training in narcotics investigations and related legal matters. Prior to my employment as a Special Agent, I was employed as a regional development officer for DeliverFund, which is a private counter-human trafficking intelligence company. DeliverFund is based in Dallas, Texas and focuses on training state and local law enforcement in specialized counter-human trafficking investigative techniques. Before that, I completed a Graduate Degree in Public Affairs from Brown University in Providence, Rhode Island, where I focused on policy related to national security, public safety, and transnational criminal investigative models.

2. During my specialized training at the DEA Training Academy, I participated in numerous exercises to include the use of confidential informants, undercover operations, physical

1

and electronic surveillance, telephone toll analysis, investigative interviews, and the execution of search and seizure warrants. In addition, I was further trained in specialized defensive tactics, firearms training, raid and entry tactics, judgmental shooting, and legal training.

3. I have participated in aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the execution of search warrants, the effecting of arrests, and debriefings of defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I am familiar with the benefits and limitations of these techniques. I have also reviewed recorded conversations and telephone, financial, and drug records. Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs. I have also become familiar with the manner in which narcotics organizations use various forms of violence and intimidation in furtherance of their narcotics trafficking activity to protect their operations, members, narcotics, and narcotics proceeds.

## PURPOSE OF AFFIDAVIT

4. I submit this affidavit in support of an application for a criminal complaint alleging that on July 1, 2021, Boris PEGUERO-ARRENDELL ("PEGUERO" or "Target Subject") possessed with intent to distribute 400 grams or more of fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(vi).

5. Based on facts set forth in this affidavit, there is probable cause to believe that PEGUERO has violated 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vi) (the "Target Offense").

6. Since this Affidavit is being submitted for the limited purpose of securing the requested criminal complaint, I have not included each and every fact known to me concerning

this investigation. I have set forth only the facts that I believe are necessary to establish the probable cause for the criminal complaint. I am familiar with the facts and circumstances of this investigation from my personal participation in the investigation, and I have also received information from a variety of sources, including but not limited to other law enforcement officers and agents, confidential sources, and my personal review of records and reports relating to the investigation.

## PROBABLE CAUSE

7.  Investigators conducted three controlled purchases of suspected fentanyl from PEGUERO between April and June 2021 utilizing a confidential source ("CS").[1] On April 15, 2021, PEGUERO provided CS with a sample of approximately 10 grams of suspected fentanyl in the parking lot of 154 Walnut Avenue, Roxbury, Massachusetts. On May 19, 2021, PEGUERO distributed approximately 100.2 grams of lab-confirmed fentanyl to CS, again in the parking lot outside 154 Walnut Avenue. For both of these transaction, investigators observed PEGUERO enter the apartment building at 154 Walnut Avenue immediately before delivering the drugs. For the third controlled purchase, on June 2, 2021, CS was directed to 154 Walnut Avenue, Apartment 1, where a woman believed to be PEGUERO's mother (the lessee of Apartment 1) delivered approximately 100 grams of suspected fentanyl on PEGUERO's behalf. Based on these observations and the investigation to date, I believe 154 Walnut Avenue, Apartment 1, Roxbury, Massachusetts is the residence of PEGUERO's mother, and that PEGUERO utilized the location as his

---

[1] CS was charged in state court with narcotics and other related offenses in 2019 and is cooperating in hopes of receiving leniency in sentencing in those matters. CS is not willing to testify because he/she fears retaliation from PEGUERO. Information provided by CS has been corroborated, to the extent possible, and CS is believed to be reliable.

"stash" location to store his drugs and/or drug proceeds.

8. On June 30, 2021, the Honorable M. Page Kelley authorized search warrants for 149 Farrington Street, #1, Quincy, Massachusetts (PEGUERO's residence) and 154 Walnut Avenue, Apartment 1, Roxbury, Massachusetts, and the cellular telephones located in both locations. [21-6479-6480-MPK].

9. On the morning of July 1, 2021, investigators executed the search warrants. Inside 154 Walnut Avenue, Apartment 1, investigators located nearly a kilogram of suspected fentanyl, nearly a kilogram of suspected cocaine/crack cocaine, around $10,000, digital scales, numerous empty bottles of lactose (which I believe, based on my training and experience, to be a common cutting agent for narcotics), and components that appeared to be part of a "press" used to compact and shape narcotics powder. The substances have been sent to the DEA laboratory for testing, but I believe the substances to contain fentanyl and cocaine/crack cocaine, respectively, based on my training and experience and the texture, color, and consistency of the substances, as well as the purchase of confirmed fentanyl from PEGUERO on May 19, 2021 outside this location.

10. PEGUERO was located inside his residence at 149 Farrington Street, #1 when investigators arrived to execute the search warrant at that location. Pursuant to the search warrant, investigators seized five Apple iPhones belonging to PEGUERO and began to search them. On one of the devices, investigators located a saved video recording which appears to depict the male operator of the camera (believed to be PEGUERO) displaying a "hide" location inside a void between the walls near a boiler. Investigators recognized the location depicted in the video as a room off the common hallway at 154 Walnut Avenue, near Apartment 1, which contains boiler and utility equipment.

11. The video, which is dated May 12, 2021, captures inside the void between the walls

4

in this boiler/utility room, and appears to show one large clear plastic bag containing white powder, and a second, more opaque, plastic bag on the ground, which appears to be full.

12. Based on the investigation to date and the appearance of the white powder in the clear plastic bag, I believe that the bag(s) likely contained narcotics and that PEGUERO utilized the void between the walls in the boiler room to store and hide his drugs.

13. On July 1, 2021, the Honorable M. Page Kelley authorized a search warrant for this boiler room and the voids in the walls therein. [21-6483-MPK]. Later on July 1, 2021, investigators executed the search warrant and located another approximately 1.5 kilograms of suspected fentanyl, approximately 220 grams of suspected cocaine/crack cocaine, 2 firearms (an unloaded .22-caliber semi-automatic revolver, and a loaded .45 caliber handgun), approximately 200 rounds of ammunition (including 9mm ammunition that did not appear to match either of the firearms), as well as more drug-dealing paraphernalia, including empty lactose bottles, scales, and empty plastic packaging. The substances have been sent to the DEA laboratory for testing, but I

believe the substances to contain fentanyl and cocaine/crack cocaine, respectively, based on my training and experience and the texture, color, and consistency of the substances, as well as the purchase of confirmed fentanyl from PEGUERO on May 19, 2021.

14. Based on the proximity of the boiler room to Apartment 1 at 154 Walnut Avenue (PEGUERO's stash house), and the video on PEGUERO's phone depicting him accessing the void in the wall in this boiler room while it contained suspected narcotics several weeks earlier, I believe the suspected narcotics, drug-dealing paraphernalia, firearms, and ammunition found in the utility room and its wall voids all belong to PEGUERO, and that he hid these items to avoid detection by law enforcement. I further believe that all of the suspected fentanyl, suspected cocaine/crack cocaine, and drug-dealing paraphernalia found inside Apartment 1 at 154 Walnut Avenue belonged to PEGUERO, who used that apartment as his stash location to store his drugs and drug proceeds.

## CONCLUSION

15. Based on the foregoing, there is probable cause to believe that PEGUERO possessed with intent to distribute 400 grams or more of fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(vi).

/s/ Brady O'Donnell
Brady O'Donnell
Special Agent
Drug Enforcement Administration

Sworn to by telephone in accordance with Fed. R. Crim. P. 4.1 this 6th of July, 2021.

HONORABLE M. PAGE KELLEY
CHIEF UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS